UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
RAYMOND NEGRON,

                        Plaintiff,

                                           MEMORANDUM & ORDER
          -against-                        18-CV-5426(JS)(ARL)

THE SUFFOLK COUNTY POLICE DEPARTMENT;
GERALDINE HART, the Suffolk County
Police Commissioner; TIMOTHY D. SINI,
The Former Police Commissioner; THE
SUFFOLK COUNTY SHERIFF'S OFFICE;
ERROL D. TOULON, JR., Suffolk County
Sheriff; and VINCENT F. DEMARCO,
Former Suffolk County Sheriff,

                        Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:      Raymond Negron, Esq., pro se[1]
                    234 North Country Road
                    Mount Sinai, New York 11766

For Defendants:     Brian C. Mitchell, Esq.
                    Suffolk County Attorney's Office
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, New York 11788

SEYBERT, District Judge:

          Plaintiff Raymond Negron ("Plaintiff") commenced this

action against the Suffolk County Police Department ("SCPD"); the

Suffolk County Sheriff's Office (the "Sheriff's Office");

---

[1] Plaintiff is not entitled the special solicitude normally
afforded to pro se litigants because he is an attorney admitted
to practice before the Court and is proceeding in his capacity
as an attorney. See Tracy v. Freshwater, 623 F.3d 90, 101-02
(2d Cir. 2010); Goldman v. Rio, No. 18-CV-2343, 2018 WL 2272763,
at *2 (E.D.N.Y. May 16, 2018).

Geraldine Hart ("Hart"), the Suffolk County Police Commissioner; Timothy D. Sini ("Sini") the former Police Commissioner; Errol D. Toulon, Jr. ("Toulon"), the Suffolk County Sheriff; and Vincent F. DeMarco ("DeMarco"), the former Suffolk County Sheriff (collectively, "Defendants"); asserting constitutional violations arising out of the suspension of his Suffolk County pistol license. (See Compl., D.E. 1.) Currently pending before the Court are the parties' cross-motions for summary judgment. (Defs. Mot., D.E. 21-1; Pl. Cross Mot., D.E. 23.) For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

PROCEDURAL HISTORY AND BACKGROUND

I.   Plaintiff's Cross-Motion

        Defendants argue that Plaintiff's cross-motion must be denied because he never sought permission to file a cross-motion, as required by the Court's Individual Rules. (Defs. Letter, D.E. 22; Defs. Sur-Opp., D.E. 26-1, at 1.) The Court's Individual Rules set forth the procedure parties must follow before filing motions for summary judgment. (Individual Rules, § IV.F.) There is no doubt that Plaintiff violated the Court's Individual Rules, however, the Court "'has broad discretion to determine whether to overlook a party's failure to comply with' its individual rules." CIT Bank, N.A. v. Donnatin, No. 17-CV-2167, 2020 WL 248996, at *2 (E.D.N.Y. Jan. 16, 2020) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)). Here, because Plaintiff served his

cross-motion with his opposition and "the legal issues raised by both motions are identical, the Court finds no surprise or prejudice warranting the extremely punitive remedy of striking" Plaintiff's cross-motion.  Id.  Accordingly, the Court considers Plaintiff's cross-motion.

II.  The Parties' Rule 56.1 Statements

Defendants ask the Court to disregard Plaintiff's Rule 56.1 Statement submitted in support of his cross-motion because it was not previously disclosed.  (See Defs. Sur-Opp., D.E. 26-1, at 1-2; Pl. 56.1 Stmt., D.E. 23-1.)  Despite Plaintiff's failure to adhere to Local Rule 56.1 and this Court's Individual Rules, the Court does not entirely disregard Plaintiff's Rule 56.1 Statement. After a thorough review of the record and the statements, the Court can decipher the facts in dispute.  See Santiago v. Cuomo, No. 12-CV-2137, 2019 WL 8587292, at *1 (E.D.N.Y. Sept. 23, 2019).

Further, in his Rule 56.1 Counterstatement, Plaintiff repeatedly responds that he "has no knowledge of any conflicting fact(s)" or that "[t]here is no admissible evidence to support or disclaim this conclusory statement."  (See, e.g., Pl. 56.1 Counterstmt., D.E. 20-1, ¶¶ 4-8, 45.)  "A non-moving party cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information, in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether

3

it must admit or deny them." Yagudaev v. Credit Agricole Am.
Servs., Inc., No. 18-CV-0513, 2020 WL 583929, at *3 n.4 (S.D.N.Y.
Feb. 5, 2020) (internal citation and quotation marks omitted).
Thus, the Court deems the paragraphs in Defendants' Rule 56.1
Statement (Defs. 56.1 Stmt., D.E. 21-2) admitted where Plaintiff
responds, for example, that he "has no knowledge of any conflicting
fact(s) (Pl. 56.1 Counterstmt., ¶¶ 4-8)." Leon v. Dep't of Educ.,
No. 10-CV-2725, 2017 WL 6729676, at *1, n.2 (E.D.N.Y. Sept. 29,
2017) (collecting cases).

Finally, the Court disregards the legal arguments and
conclusions improperly asserted in the parties' respective Rule
56.1 Statements. (See, e.g., Pl. 56.1 Counterstmt. ¶¶ 9, 47; Defs.
56.1 Stmt., ¶ 59); LG Capital Funding, LLC v. PositiveID Corp.,
No. 17-CV-1297, 2019 WL 3437973, at *2 (E.D.N.Y. July 29, 2019),
R&R adopted, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019).

III. Facts[2]

Plaintiff served in the United States Army and Army
Reserve as a commissioned Judge Advocate and an enlisted Military
Police from 1986 to approximately 2000 and 2003, respectively.
(Compl. § III, ¶ L.)  From 1992 through 1996, Plaintiff worked as

---

[2] The facts are drawn from the parties' Local Civil Rule 56.1
Statements consistent with the rulings stated herein.  Where the
parties agree, the Court only cites to Defendants' 56.1
Statement and otherwise notes any factual disputes.

a United States Immigration Officer and from 1996 through his retirement in 1999, as a New York City Fire Department ("FDNY") firefighter. (Compl. § III, ¶¶ N-O.) In 1987, the Suffolk County Police Department Pistol License Bureau (the "Pistol License Bureau") issued Plaintiff a pistol license. (Compl. § III, ¶ H; Defs. 56.1 Stmt. ¶ 5.)

In November 2016, Plaintiff, as an attorney, spoke with the Suffolk County District Court Supervising Judge and reported that Judge Linda Kevins, a Suffolk County Supreme Court Justice, threatened him during a Court appearance.[3] (Pl. 56.1 Stmt. ¶ 12.) On November 4, 2016, non-party Donna Giordano ("Giordano"), a Suffolk County Detective Sergeant in the Criminal Intelligence Bureau, informed non-party SCPD Lieutenant Joseph Cahill ("Cahill"), the Commanding Officer of the Pistol Licensing Bureau, of the "incident" between Plaintiff and Judge Kevins and that Plaintiff "may have some PTSD issues." (Cahill Dep., Mitchell Decl., Ex. A, D.E. 21-5, at 6:20-7:7; Defs. 56.1 Stmt. ¶¶ 2-4.) On November 7, 2016, Cahill initiated a non-suspension re-

---

[3]. Although vague, Plaintiff avers that during the Court appearance, Judge Kevins told Plaintiff "your turn" while off the record and accused him of misrepresentation. (See Pl. 56.1 Stmt. ¶ 11.) Plaintiff also reported that Judge Kevins' husband had threatened him for his "participation in political activities," including for supporting "DeMarco's efforts for re-election." (See Pl. 56.1 Stmt. ¶¶ 4-5, 12, 16.) Judge Kevins recused herself from the case. (Pl. 56.1 Stmt. ¶ 12.)

evaluation[4] into Plaintiff's pistol license.   (Defs. 56.1 Stmt. ¶¶ 6, 8.)

Cahill also received a report prepared by Leonard Badia ("Badia"), the Deputy Chief Clerk of the Suffolk County District Court, that provided an "assessment and summary" from Badia's interview with Plaintiff (the "Report").   (Defs. 56.1 Stmt. ¶ 9; Report, Mitchell Decl., Ex. C, D.E. 21-7.)   The Report states that on November 2, 2016, the Supervising Judge informed Badia that Plaintiff said he suffered from PTSD, that Judge Kevins "trigger[ed]" his PTSD, and that "if and when [Plaintiff] was to be in Judge Kevin's courtroom, 'there needed to be an extra court officer present.'"   (Report at 1.)   Badia met with Plaintiff who explained that Judge Kevins' comments in open court triggered Plaintiff to "say inappropriate or even actionable comments to the judge."[5]   (Report at 1.)   Plaintiff further explained that he requested extra court officers because he "found that the presence of a uniformed officer reminded him to not act in a way that would

---

[4] This is an "investigation into a pistol license holder based upon information about the pistol license holder that that does not rise to the point of suspen[sion]" and investigation. (Defs. 56.1 Stmt. ¶ 7.)

[5] Plaintiff testified that Judge Kevins "publicly [said] things to question [his] integrity, [ ] calling [him] a liar in front of a full courtroom on the record" and that was a "trigger" or "stressor."   (Negron Dep., Mitchell Decl., Ex. E, D.E. 21-9, at 22:14-21.)

be counter to his core values and beliefs." (Report at 1-2.) Badia "scrutinized" Plaintiff's comments but did not believe that they "were an attempt to threaten or intimidate Judge Kevins." (Report at 2.) Badia recommended that Plaintiff "seek guidance and professional assistance" to "appropriately articulate his feelings regarding judicial conduct and decisions." (Report at 2.)

Cahill suspended Plaintiff's pistol license in consideration of the Report and information received from Giordano. (Defs. 56.1 Stmt. ¶¶ 10, 13.) On November 7, 2016, the Pistol Licensing Bureau advised Plaintiff that his pistol license was suspended and that he had to surrender his handguns and license.[6] (Defs. 56.1 Stmt. ¶¶ 15-19.) Plaintiff spoke with DeMarco, then-Suffolk County Sheriff, who suggested that Plaintiff surrender his handguns to the Sheriff's Office Quartermaster. (Defs. 56.1 Stmt. ¶¶ 21-22.) Allegedly, DeMarco stated that if the handguns were not surrendered for legal reasons, they would be marked for "safe keeping" and Plaintiff could reclaim them "no matter what." (Defs. 56.1 Stmt. ¶¶ 21-23.) On November 9, 2016,

---

[6] Under New York Law, after an individual's pistol license is suspended, "that individual is required to surrender 'any and all firearms, rifles, or shotguns.'" Torcivia v. Suffolk Cty., 409 F. Supp. 3d 19, 33-34 (E.D.N.Y. 2019) (quoting N.Y.P.L. § 400.00(11)).

Plaintiff voluntarily surrendered his handguns to the Sheriff's Office Quartermaster for safe keeping.[7] (Defs. 56.1 Stmt. ¶ 20.)

Plaintiff did not notify the Pistol Licensing Bureau that he surrendered his handguns as required by the Suffolk County Pistol License Information Handbook (the "Pistol License Handbook"). (Defs. 56.1 Stmt. ¶¶ 24-27, 32; see generally Pistol License Handbook, Mitchell Decl., Ex. G, D.E. 21-11, at 28.) On November 23, 2016, SCPD members visited Plaintiff at home to ask about the status of his handguns. (Defs. 56.1 Stmt. ¶ 31.) Plaintiff provided the SCPD officers with a Sheriff's Office receipt that acknowledged the surrender of his handguns. (Defs. 56.1 Stmt. ¶¶ 37-39.)

Between November 9, 2016 and February 2017, Plaintiff never requested that the Sheriff's Office return his handguns. (Defs. 56.1 Stmt. ¶ 41.) In February 2017, DeMarco arranged for Plaintiff to access one of his handguns to qualify for the Federal Law Enforcement Officers Safety Act ("LEOSA")[8] at the Suffolk

---

[7] Plaintiff also argues that he "has been the subject of a series of threats," that began shortly after the suspension of his pistol license, and "appear[s] to be closely associated" with the events underlying this action. (Pl. 56.1 Stmt. ¶ 29.) Plaintiff represents that he received "threatening telephone calls and notes in his mailbox that hinted at knowledge of the license suspension," threats to his family, and that the SCPD refused to investigate the threats. (Pl. 56.1 Stmt. ¶¶ 29-30.)

[8] LEOSA, detailed infra, established that "qualified retired law enforcement officers are allowed to carry concealed firearms

County Sheriff's Department Pistol Range. (Defs. 56.1 Stmt. ¶¶ 39-40.) On February 2, 2017, the Sheriff's Office issued Plaintiff a "Firearms Qualification Record." (Firearms Qual. Record, Negron Decl., Ex. F, D.E. 23-8, at ECF p. 2.) The Firearms Qualification Record reads that Plaintiff was a retired FDNY member and that he received "Firearm Safety" and "Use Of Force" training. (See Firearms Qual. Record.) After shooting at the range, Plaintiff returned his handgun to the Sheriff's Office and did not ask for its permanent return. (Negron Dep. at 104:9-105:12.)

On or around April 19, 2017, Plaintiff asked DeMarco for his handguns and was instructed to "call the Quartermaster." (Defs. 56.1 Stmt. ¶¶ 42-43.) On April 21, 2017, the Quartermaster refused to return Plaintiff's handguns without permission from the Pistol Licensing Bureau. (Defs. 56.1 Stmt. ¶ 44.) On April 21, 2017, the Department of the Army issued Plaintiff a "Qualified DoD Law Enforcement Officer" identification card (the "LEOSA Card"). (LEOSA Card, Negron Decl., Ex. F, D.E. 23-8, at ECF pp. 3-4.) The back of the LEOSA Card reads that:

> For 18 U.S.C. 926C the credential must be accompanied by the individual State [Law Enforcement Officer] firearms qualification standard. If the State has not established a standard, the instructor will certify the officer has completed a NRA approved [Course of Instruction/Course of Fire] conducted by a State certified firearms instructor using the member's privately owned firearm and personally procured ammunition.

---

across state lines." D'Aureli v. Harvey, No. 17-CV-0363, 2018 WL 704733, at *1 (N.D.N.Y. Feb. 2, 2018).

(LEOSA Card at ECF p. 4.)   In August 2017, the Pistol Licensing Bureau completed its investigation and reinstated Plaintiff's pistol license.   (Defs. 56.1 Stmt., D.E. 21-4, ¶ 47.)   Between April 2017 and August 2017, Plaintiff did not contact the Pistol Licensing Bureau to request the return of his handguns.   (Negron Dep. at 126:21-127:6, 128:14-22.)

<u>THE PARTIES' ARGUMENTS</u>

Defendants seek summary judgment on all of Plaintiff's claims.   Defendants first argue that summary judgment in their favor is appropriate to the extent Plaintiff alleges violations of the Second, Fourteenth, and Fourth Amendments as well as a violation of LEOSA.   (Defs. Br. at 7-17.)   In response, Plaintiff clarifies that he does not assert a violation of LEOSA nor a violation of the Second Amendment arising out of the suspension of his pistol license.   (Pl. Br., D.E. 23-16, at 4.)   Instead, Plaintiff argues two claims:  (1) "Defendants wrongly deprived him of his due process rights under the color of law regarding the suspension of his license" and (2) Defendants, acting under the color of law, violated his Second and Fourth Amendment Rights to bear arms and be free from unreasonable seizures of personal property because under LEOSA "Defendants had no authority whatsoever to retain Plaintiff's pistols after Plaintiff demanded them back."  (Pl. Br. at 4.)

10

<u>ANALYSIS</u>

I.   <u>Legal Standards</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986).  The movant bears the burden of establishing that there are no genuine issues of material fact.  <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).  Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." <u>Giglio v. Buonnadonna Shoprite LLC</u>, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted).  Conclusory allegations or denials will not defeat summary judgment.  <u>Id.</u>

In reviewing the record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" <u>Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc.</u>, No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997)).  The Court considers the "pleadings, deposition testimony,

11

answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

II.  Discussion

A.  Claims against the SCPD and the Sheriff's Office

Plaintiff's claims against the SCPD and the Sheriff's Office are DISMISSED with prejudice.  These departments are non-suable entities because they are "'administrative arm[s],'" that do "'not have [ ] legal identit[ies] separate and apart from the municipality.'"  Spagnuolo v. Suffolk Cnty., No. 12-CV-4327, 2017 WL 4326510, at *2 (E.D.N.Y. Sept. 28, 2017), aff'd sub nom. Spagnuolo v. Howell, 2020 WL 2488582 (2d Cir. May 14, 2020) (quoting Rose v. Cty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)); Panzella v. Cty. of Nassau, No. 13-CV-5640, 2015 WL 5607750, at *5 (E.D.N.Y. Aug. 26, 2015).

The Court considers that Plaintiff may also assert a Section 1983 claim against the municipality, Suffolk County, pursuant to Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).  However, as stated supra, Plaintiff represents that he asserts two distinct claims and not a Monell claim.  In any event, Plaintiff did not respond to Defendants' arguments regarding municipal liability.[9]

---

[9] In his reply, Plaintiff includes a brief "Policy" section. (Pl. Reply, D.E. 25, at 5.)  However, "[a]rguments raised for

(See, e.g., Defs. Br., at 19-20; Defs. Reply, D.E. 24-1, at 8-10; Defs. Sur-Opp. at ECF pp. 2 n.1, 4-6.)  Therefore, to the extent alleged, this claim is DISMISSED as abandoned.  Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").)

B.  Plaintiff's Section 1983 Due Process Claim

Plaintiff alleges a "violation of civil rights under the color of law: suspension of Plaintiff's New York State Pistol License" and argues that the "evidence tends to show that Defendants used their positions in an arbitrary manner, followed no particular procedures, denied Plaintiff any post-deprivation opportunity to be heard, and did so as a 'favor' to other state actors with no regard to Plaintiff" or his rights.  (Pl. Br. at 6, 4.)

As a preliminary matter, Plaintiff's Section 1983 claims against the individually-named Defendants are DISMISSED with prejudice for lack of personal involvement.  See Grullon v. City

---

the first time in a reply brief will generally not be considered."  Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC, 419 F. Supp. 3d 490, 521 (E.D.N.Y. 2019).  Nonetheless, as concluded below, "because Plaintiff has not established any primary violations" of Section 1983, his "Monell claims necessarily fail."  Mejia v. City of N.Y., No. 17-CV-2696, 2020 WL 2837008, at *12 (E.D.N.Y. May 30, 2020)

of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."). Other than limited references to DeMarco, there is nothing in the record indicating that the individually-named Defendants were involved in the decision to suspend Plaintiff's pistol license or with the decision to retain his handguns during the suspension. Thus, the Section 1983 claims against the individually-named Defendants are DISMISSED. See Nguedi v. Caulfield, No. 18-3199, 2020 WL 2192341, at *1 (2d Cir. May 6, 2020) ("Because [the plaintiff] failed to present any facts of [defendant's] 'personal involvement . . . ,' which 'is a prerequisite to an award of damages under § 1983,' [plaintiff's] claim against the [defendant] fails.") (quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013)); Garvin v. Goord, 212 F. Supp. 2d 123, 127 (W.D.N.Y. 2002).

Even if Plaintiff named the appropriate defendants and established their personal involvement, the Section 1983 claims are DISMISSED because Plaintiff had an adequate remedy in an Article 78 proceeding. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "To assert a claim under Section 1983 based on an alleged violation of

14

procedural due process, plaintiff must plead (1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due process." Clavin v. Cty. of Orange, 620 F. App'x 45, 47-48 (2d Cir. 2015) (summary order) (citation omitted).

Defendants argue that there is no "protectable interest in a New York State-issued handgun license" and that Plaintiff had an "appropriate available remedy" in an Article 78 proceeding in state court. (Defs. Br. at 9-10.)  Plaintiff responds that he has a property interest in (1) holding a New York pistol license and (2) "not being in a 'suspended' status inasmuch as it would have an adverse [e]ffect upon his reputation." (Pl. Br. at 11.) Plaintiff also argues that there is no "recourse" for challenging the Pistol License Bureau's suspension decision. (Pl. Reply at 2-3.)

New York Penal Law Section 400.00 "is the exclusive statutory mechanism for the licensing of firearms in New York State." Kachalsky v. Cty. of Westchester, 701 F.3d 81, 85-86 (2d Cir. 2012) (internal quotations marks and citations omitted). "Licensing officers[10] have 'broad discretion in determining whether

_____

[10] "Applications for a firearm license are made to the licensing officer in the county where the applicant resides." Henry v. Cty. of Nassau, No. 17-CV-06545, 2020 WL 1185283, at *6 (E.D.N.Y. Mar. 12, 2020) (citing N.Y.P.L. § 400.00(3)(a)).

to issue or revoke a license to possess firearms.'"  Henry, 2020 WL 1185283, at *6 (quoting Juzumas v. Nassau Cty., 417 F. Supp. 3d 178, 181 (E.D.N.Y. 2019)).  Accordingly, "[c]ourts within this Circuit have held that because a New York State government official's issuance of a pistol permit is a discretionary act, an individual has no property interest in holding such a permit." Johnson El ex rel. Johnson v. DeProspo, No. 19-CV-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) (collecting cases); Boss v. Kelly, 306 F. App'x 649, 650 (2d Cir. 2009) (summary order).

While the Court is sympathetic to Plaintiff's position, it need not decide whether Plaintiff has a protected property or liberty interest in his pistol license because "[w]hatever level of process was due in this case, it was available in the form of an Article 78 proceeding before the New York State Supreme Court." Montalbano v. Port Auth. of N.Y. & N.J., 843 F. Supp. 2d 473, 485 (S.D.N.Y. 2012); DeProspo, 2019 WL 6311882, at *4 ("Courts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses.") (collecting cases).  "It is settled law in this Circuit that 'an Article 78 proceeding provides the requisite post-deprivation process--even if a plaintiff failed

---

Plaintiff resides in Mount Sinai, New York (located within the Town of Brookhaven) and the relevant licensing officer is "the commissioner of police of that county."  N.Y.P.L. § 265.00(10).

to pursue it.'" Montalbano, 843 F. Supp. 2d at 485 (quoting Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011)); see Sibley v. Watches, No. 19-CV-6517, 2020 WL 2525771, at *11–12 (W.D.N.Y. May 18, 2020) (collecting cases).

Here, Plaintiff could have challenged his license suspension "as an arbitrary and capricious determination pursuant to N.Y. C.P.L.R. § 7803(3), which would have entitled him to a full hearing, and possibly a trial, before a New York State Supreme Court Justice with the power to annul" Defendants' suspension decision. Montalbano, 843 F. Supp. 2d at 485 (citations omitted). Plaintiff chose not to avail himself of that process and therefore he "has not established a violation of Procedural Due Process under the Fourteenth Amendment." Id. Therefore, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's Section 1983 due process claim.[11] Torcivia v. Suffolk Cty., 409 F. Supp. 3d 19, 40–41 (E.D.N.Y. 2019) (collecting cases).

---

[11] The Court struggles to follow Plaintiff's additional argument that his Complaint "lies much more in bad-conduct under the 'color of law' than it does in a due-process claim." (Pl. Br. at 13.) Plaintiff cannot prove a Section 1983 claim by emphasizing only Defendants' alleged "bad-conduct," without more. See Mitchell v. Cty. of Nassau, 786 F. Supp. 2d 545, 555 (E.D.N.Y. 2011) (to succeed under Section 1983, Plaintiff must prove both: (1) a constitutional deprivation and (2) that Defendants were "acting under the color of law.").

C.  <u>Plaintiff's LEOSA-Based Claim</u>

Plaintiff next alleges a violation of his "civil rights" under the Second, Fourth, and Fourteenth Amendments while Defendants acted "under the color of law." (Pl. Br. at 16.) He also argues that the sole issue is whether "New York State Penal Law § 400 supercede [sic] LEOSA, or [vice] versa" and asserts that LEOSA grants qualified retired officers the unfettered right to possess a concealed weapon, regardless of state licensing laws and regulations. (Pl. Br. at 18-19; Pl. Reply at 3-4.) Defendants argue that LEOSA does not create an individual right actionable under Section 1983 (Defs. Br. at 14-17) and that LEOSA does not preempt N.Y.P.L. § 400 (Defs. Br. at 13-14; Defs. Reply at 6-8).

As relevant here, LEOSA states:

(a) Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C ("Section 926C"). Congress enacted LEOSA to:

"[O]verride State laws and mandate that retired and active police officers could carry a concealed weapon anywhere within the United States." H.R. Rep. No. 108-560 at 3 (2004). Prior to LEOSA, states had inconsistent laws with regards to allowing current and former law enforcement officers to carry concealed weapons within their borders. <u>See</u> <u>id.</u> at 11. While some states recognized conceal-carry permits of law enforcement officers from other states, many did not. <u>See</u> <u>id.</u> Supporters of the bill believed that LEOSA would allow retired law enforcement officers "to defend themselves

18

outside their own State from criminals whom they have arrested." Id. at 4.

Harvey, 2018 WL 704733, at *1.

First, based on his use of the phrase "under the color of law," the Court considers that Plaintiff may assert a Section 1983 claim to vindicate an alleged violation of his right to carry a concealed firearm under LEOSA. Courts within this Circuit, as well as the Fourth Circuit, the Eleventh Circuit, and nearly every other District Court to address the issue, hold that "Congress did not intend to create a private cause of action under LEOSA." Johnson v. N.Y. State Dep't of Corr. Servs., 709 F. Supp. 2d 178, 186 (N.D.N.Y. 2010); Carey v. Throwe, 957 F.3d 468, 481 (4th Cir. 2020) (holding same and collecting cases); Burban v. City of Neptune Beach, 920 F.3d 1274 (11th Cir. 2019) (same). In fact, Plaintiff "agrees" that LEOSA does not create a private cause of action. (Pl. Br. at 4.) Therefore, to the extent alleged, Plaintiff's Section 1983 claim based on a violation of LEOSA is DISMISSED with prejudice. See Ramirez v. Port Auth. of N.Y. & N.J. (PANYNJ), No. 15-CV-3225, 2015 WL 9463185, at *6 (S.D.N.Y. Dec. 28, 2015) ("Congress did not intend to make its violation actionable under § 1983."); see also Johnson, 709 F. Supp. 2d at 185; Carey, 957 F.3d at 479 (plaintiff's "claim must fail because § 1983 is not an available remedy for purported violations of LEOSA.").

Second, even assuming LEOSA established a private right enforceable by Section 1983, the Court disagrees with Plaintiff's interpretation that LEOSA grants every qualified retired officer the unfettered right to carry concealed handguns. Rather, as aptly stated by the Johnson court, although "Congress explicitly intended LEOSA to apply '[n]otwithstanding any other provision of the law of any State,' 18 U.S.C. § 926C(a), the statute's language only demonstrates an intent to bar the criminal prosecution of retired law enforcement officers who carry concealed firearms in interstate commerce." Johnson, 709 F. Supp. at 187 (emphasis added); accord Carey, 957 F.3d at 480 ("As it stands today, and as it stood when Congress passed LEOSA, . . . [LEOSA] generally prevent[s] states from prosecuting out-of-state officers who choose to carry under a LEOSA-compliant permit already issued."). Here, LEOSA is inapplicable for the simple reason that Plaintiff was not criminally charged for carrying a concealed weapon as a LEOSA-qualified retired officer.[12]

The Court is aware of one out-of-circuit decision that held "LEOSA creates an individual right to carry" enforceable by Section 1983. See DuBerry v. D.C., 824 F.3d 1046, 1054 (D.C. Cir. 2016). However, not only were facts underlying the DuBerry

---

[12] Plaintiff's argument that "[p]rosecutors in New York have not fared well trying to apply criminal laws pertaining to pistols to LEOSA qualified people" underscores this understanding. (Pl. Br. at 17.)

decision distinct, but the D.C. Circuit acknowledged that "a state may retain some discretion, for example to the extent it concludes that a retired law enforcement officer seeking to exercise a LEOSA concealed-carry right is currently either not physically or mentally capable of being in responsible possession of a firearm, see 18 U.S.C. § 926C(c)(5)." Id. at 1054 ("[T]he issue of any discretion [the state] may retain is not before this court."). Thus, DuBerry does not compel a contrary conclusion when assuming, without deciding, that the Pistol Licensing Bureau exercised its discretion to suspend Plaintiff's pistol license pending an investigation into claims of PTSD.[13]

Third, Plaintiff's LEOSA claim fails because there is no evidence that he approached the Pistol Licensing Bureau with LEOSA-compliant identification. Indeed, while Plaintiff generally alluded to his LEOSA-qualifying status, the record does not reflect he was "carrying the identification required by" Section 926C(d) at all relevant times. To obtain concealed carry privileges as a qualified retired officer, Plaintiff must have carried both (1) a photographic identification card and (2) a certificate of firearms

---

[13] As stated, supra, Plaintiff had an available remedy in an Article 78 proceeding to challenge the Pistol Licensing Bureau's decisions and actions.

qualification meeting certain criteria.  <u>See</u> Section 926C(d)(2)(A)-(B).[14]

Here, Plaintiff argues that he was a LEOSA-qualified retired officer and cites to his FDNY identification card, the LEOSA Card, and the Firearms Qualification Record.  (Pl. Br. at 18.)  However, while Plaintiff arguably satisfied the first prong of LEOSA's credentialing requirements under Section 926C(d)(2)(A) on April 21, 2017, but not before, when the U.S. Army issued the LEOSA Card, there is no evidence that he provided the Pistol License Bureau with his LEOSA Card.[15]  Moreover, the LEOSA Card

---

[14] Section 926C(D)(1) is inapplicable because the proffered identification cards do not meet the requirements stated therein.

[15] The Court disagrees that Plaintiff's FDNY identification card satisfies Section 926C(d)(2)(A).  (<u>See</u> Negron Dep. at 76:6-15 (testifying that he would have shown his "FDNY retired card" as proof of LEOSA-eligibility.)  Under Section 926C(c)(2), "the term 'qualified retired law enforcement officer' means an individual who," among other things, "was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, <u>any</u> violation of law, <u>and</u> had statutory powers of arrest or apprehension under" 10 U.S.C. § 807(b) (emphasis added).  The Court is not aware of any law bestowing firefighters, as peace officers, these broad powers.  To the contrary, the relevant portion of New York City Administrative Code provides, with exceptions, that an FDNY member's "power to make arrests and to serve process in criminal actions <u>shall be restricted to cases arising under laws relating to fires and the extinguishment thereof, and to fire perils</u>."  New York City, N.Y., Code § 15-116 (emphasis added).  In any event, there is no evidence that Plaintiff presented the Pistol License Bureau with his FDNY identification card as proof of entitlement to LEOSA protection.

alone is insufficient.  The Firearms Qualification Record, issued in February 2017, does not indicate that Plaintiff met "(I) the active duty standards for qualification in firearms training, as established by the State, to carry a firearm of the same type as the concealed firearm" or (II) the "standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm."  See Section 926C(d)(2)(B).  Therefore, Plaintiff did not discharge his obligation under LEOSA to carry proper identification and he cannot post-hoc avail himself of LEOSA's protections.[16]  Therefore, Defendants' motion for summary judgment is GRANTED and Plaintiff's LEOSA-based claim is DISMISSED.

    D. Plaintiff's Fourth Amendment Claim

    Plaintiff argues that "Defendants' reliance on any New York State Laws for their decision to withhold Plaintiff's property is a violation of Plaintiff's Fourth Amendment rights." (Pl. Reply at 3.)  The Fourth Amendment prohibits unreasonable seizures.  A seizure "occurs when there is some meaningful interference with an individual's possessory interest in his or her property." U.S. v.

---

[16] The Court rejects the argument that Defendants should have requested Plaintiff's credentials or further investigated his LEOSA-eligibility because "LEOSA's privileges are contingent upon 'Qualified Law Enforcement Officers' fulfilling their duties—namely, those requiring proper identification.  Those duties are Plaintiff's" and not Defendants'. Rodrigues v. Cty. of Hawaii, No. 18-CV-0027, 2018 WL 1902544, at *7 (D. Haw. Apr. 20, 2018).

Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984).  Where an individual consents to surrender property, a seizure is reasonable.  Kaminsky v. Schriro, 760 F. App'x 69, 72 (2d Cir. 2019) (summary order).  Moreover, the "failure to return lawfully seized property is not an unreasonable seizure under the Fourth Amendment."  Bello v. Rockland Cty., N.Y., No. 19-CV-3514), 2020 WL 2319115, at *5 (S.D.N.Y. May 11, 2020) (citation omitted).

There is no dispute that Plaintiff voluntarily surrendered his handguns to the Sheriff's Office.  Accordingly, the "continued retention of property does not constitute an additional seizure or transform a lawful seizure into an unlawful one."  Bello, 2020 WL 2319115, at *5; Mallard v. Potenza, No. 94-CV-0223, 2007 WL 4198246, at *4 (E.D.N.Y. Nov. 21, 2007).  Therefore, to the extent alleged, Plaintiff's Fourth Amendment claim is DISMISSED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.  Because Plaintiff is proceeding in his capacity as an attorney, he will not receive a copy of this Memorandum and Order by mail.  The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June   29  , 2020
       Central Islip, New York